I reserve one minute for rebuttal. Okay, thank you. May it please the court. I'd like to make three points this morning. First, that the application of the standard review that Stoneola was simply an application of well-established Ninth Circuit law. It's point by point, the district court was wrong. Second, the pre-existing condition provision in the policy is not clear, plain, and conspicuous and should have been declared void as a matter of law. That's a little more complicated because it requires an application of state law to the state statute and an application of federal law, the Saltorelli standard, to the policy itself. And it's a minor and very elementary expansion of the common law over Saltorelli. The third point I want to make relates to remedies. Succeeding on these two points is success on the merits that warrants an award of fees. And on remand, the remand should be very narrow given the procedural structure of the case. So the first issue, of course, is standard of review. Standard review in this ---- Respect to your third point, I hadn't really thought about that. Supposing, argue, and we agree with you on one of your two points and disagree with you on the other point, where does that leave? Depends on what you agree with and disagree with. Not telling. The standard of review gets me a new hearing, but if the preexisting condition provision is enforced, I'm going to lose. So that's a foregone conclusion. So I have to win preexisting condition. But standard of review, I don't have to win. It goes one way or the other. What if we were to find, Mr. Rossetti, that the standard of review is de novo, as you request, but that the PCL, the preexisting condition, is valid? You lose? I lose. Because the evidence in the administrative record shows that virtually all of O'Connor's conditions are preexisting, factually. If the preexisting condition provision is enforced, O'Connor has no chance of winning. Okay. As a practical matter. Got it. So standard of review is simply application of existing law to the facts of this case. The policy does not reserve discretion. The amendatory rider to the policy does not reserve discretion. The collateral documents to the policy are not part of the policy. That's the whole point of the zipper clause. Let me ask you about that rider. Because I know in it, it specifically says that Lena will be deciding claims for benefits. What do we make of that? That's virtually the same language that's in Sandy and in Ingram, and was held not to be sufficient to reserve discretion. So it doesn't reserve discretion. You can compare the language in the rider to the language in the appointment of claim fiduciary, where the appointment of claim fiduciary actually reserves discretion, but the language in the rider doesn't. There is a clear difference, and the difference is clearly articulated in the case law in Sandy and in Ingram, which have virtually identical facts. I think Ingram has virtually the same language. And the Court said, no, this isn't good enough, because it isn't. So on existing law, that's done. The norm, of course, is because if I can incorporate into a policy collateral amendments or collateral documents that haven't been formally amended, I can argue that almost anything is part of a policy. The reason parties incorporate zipper clauses is to preclude that. It works both ways. It protects the insurance company, and it protects the employee. But if it works for the insurance company, it works for me. They can't artificially amend the policy. They can't end-run the procedural requirements for amending the policy, and they apparently did. Winteroud and Amara make it clear that if you want to amend the policy, you follow the rules that your amendment specifies. They didn't do that. So wrong standard review means reversal as a matter of law. Then it goes back to the district court. The other issue, of course, is the PREACTS. PREACTS is a much more conceptually complicated issue, but it flows logically. Policy subject to Delaware law. Delaware law requires certain language in a PREACTS. This language doesn't track the language. We can fight over different points, but the ultimate point is part of this language says a reasonable person would have consulted a physician, which is the language of 3517, is not in substance. A reasonable person would have consulted a physician is the language in the policy, is not in substance the same as medical advice or treatment received, which is the language in the statute. But why under Delaware law does that make the entire clause unenforceable rather than just the offending part of it? Well, that's only under Delaware law. There are two possible remedies, and one remedy is to avoid the entire clause. The other remedy is simply to conform the clause to the statute. So if you conform the clause to the statute, which is what Lena asked for, then you have to look at the next step. If you're conforming the clause to the statute, is the PREACTS now clear, plain, and conspicuous? If a lay person has to read a statute that's not in the policy to understand what it means, how can that be clear, plain, and conspicuous? You're going to encounter this recurrently. We encounter this in California with the statute that deals with exclusions for alcohol and substance abuse. And I've argued in district courts that when the statute doesn't track, when the policy exclusion doesn't track the statute, it's void. So I see. So you're just, you're saying if someone, if you have to excise part of the language, then it can't be clear to the average person reading it. Right. Saul Torelli said even though the exclusion was actually in the policy, it was so awkwardly written that nobody could understand it. The Lancaster court said the exclusion couldn't be found in the policy, and therefore it was not clear, plain, and conspicuous. I'm simply expanding from Saul Torelli in Lancaster and saying, look, if in fact you have to send the lay person to read a statute to understand what the exclusion means, how can it be clear, plain, and conspicuous? It isn't. The lay person is not assumed to go reading statutes and understanding their significance. So the logic here is once you apply the statute to conform the language of the pre-ex to the statute, it's no longer clear. Because otherwise, you have to have, I mean, by definition, you have to look somewhere else. And again, that's a logical extension of Saul Torelli in Lancaster, because after all, if a lay person can't find the exclusion, and the defense says, look, it's right there, it says we exclude preexisting conditions, but it doesn't tell you what the pre-ex is if you have to conform it. It gives you a false representation of what the pre-ex is. The argument I made in the opening brief was, look, if the sign, speed sign says you're going 40 and you're driving 35 and you get a ticket because the actual speed limit is 25, you've got to read the statute to know that when the sign says 40, it means 25. That's not clear. This is clearly not clear, because you have to send a lay person to read a statute. And even for lawyers, it's not clear. Most of the cases in the Ninth Circuit and district courts in the Ninth Circuit that deal with this issue have dealt with language that's not clearly articulated in the text of the policy or not clearly identified in the text of the policy. But this is different. And the difference is it's not actually in the policy. So, yes, you have to conform the nonconforming language of the agreement to the statute. But once you do that, it's not clear, by definition, because it's not there. Kagan. Counsel, does it matter that the provision that you argued about in your moving papers, the reasonable person provision, that's not the reason, that's not the basis for Lena's denial of coverage? Doesn't matter at all. The basis for Lena's denial of coverage is the preexisting condition provision. If the provision is not enforceable, their reasons don't stand. The reason the provision is not enforceable is because it's not clear, plain and conspicuous. They want to say, well, we can carve out the part that we're actually relying upon, but that doesn't answer the question of whether a layperson could understand the provision. The Ninth Circuit in Saltorelli, this Court in Saltorelli, didn't say you should have been able to understand it because it wasn't there. I have ten seconds left. Remedies are I want fees, and on remand they can't get a do-over because they've already had their opportunity. They can't offer new evidence and new arguments. And I'll reserve my minute.  Yeah, we'll put a minute on the clock for rebuttal. Thank you. Thank you, Judge Thomas, and may it please the Court. My name is Caleb Woldemich, and I represent the Life Insurance Company of North America. The Supreme Court has stressed the particular importance of enforcing an ERISA plan as written, but plaintiff would have this Court eliminate and ignore entire provisions of the plan that HRL Laboratories created. Because plaintiff's case comes down to, as my friend conceded this morning, to eliminating the preexisting condition limitation altogether. I'd like to start there. I am, of course, happy to talk about why the district court was right on the appointment of claim fiduciary. On the preexisting condition limitation, plaintiff is essentially making a facial attack and seeks to eliminate it altogether. That's wrong for four reasons. One is that the Delaware Insurance Commissioner approved the relevant language over 25 years ago. Second is that the limitation in the policy complies with the statute. There's certainly, Judge D'Alba, as you pointed out, there's no relevant difference on the facts here. Plaintiff isn't – we're not arguing that plaintiff should have seen a  physician. Plaintiff did, in fact, see a physician multiple times, multiple physicians throughout the look-back period. Counsel, let me interrupt you and just ask you really quickly to address Mr. Rosati's argument that this is like having someone driving by. They think that the speed limit's 40 because that's what's posted, but then they get pulled over because the speed limit is really 25. So here, I know the example doesn't track exactly because, again, that wasn't the basis for Lena's denial. But what is – what is Ms. O'Connor to do when trying to determine whether or not the preexisting condition even applies? So I think plaintiff has it exactly backwards on that hypothetical. It's not that the speed limit's 40, but you get pulled over for going 25. Assuming this hypothetical applies, this posted speed limit's more like 30. The actual law says 40, but you get pulled over – sorry, posted as being 40, then you get pulled over for going 70. It doesn't matter here. If the posted speed limit is actually lower or greater, it doesn't make a difference here, and it certainly wouldn't mean that there's no speed limit on the road at all. You could reasonably expect that you could go the speed limit that's posted. If it turns out the law is actually higher and it's posted as 30 and you were going 40, whatever – I'm sorry, I'm – You can – If you're way over – If you're way over, it doesn't matter.  And here – and the point that I'm trying to get at is that, if anything, the statute would give plaintiff a little bit more. The statute is not giving – is not taking away something that the policy would otherwise give. It's not constricting in any way. It's liberalizing. If you read the policy through the statutory lens, potentially, if there were a relevant difference, it could give plaintiff a little bit more. But plaintiff's reasonable expectations are the ones drawn from the four corners of the text. The reasonable expectations doctrine is an objective inquiry based on the text of the policy, and any reasonable person reading the policy would know that there's a preexisting condition limitation. It's under a boldface limitations heading in all caps, a boldface preexisting condition limitation subheading. That is what a reasonable expectation – person would expect to have. If there's some mismatch between the policy and the statute, the limitation doesn't drop out altogether. You would simply read the policy through the statutory lens. If there's something in the statute that plaintiff is entitled to, plaintiff would receive the benefits of that. But if something's within the heartland of a preexisting condition limitation, as plaintiff in this case is, the limitation wouldn't go out altogether. And plaintiff is inside a single case where the court applied the reasonable expectations doctrine in a way that took away, you know, something that either preserved the status quo or gave plaintiff a little bit more. All of the cases are about unfairly depriving the insurer of what they would have reasonably expected reading the terms of the policy. If something's in one-point font, upside down on the back page, there's no way to enforce that. That's not what a reasonable person would expect to have. But if a statute says, actually, we need to not, you know, look at that provision, that particular term can't apply, that's not a basis for eliminating the condition altogether. And we cited on page 44 of our brief a number of State court decisions doing a very similar thing. You've got a statute that limits what the policy can do, and the court recognizes we're going to apply the statute, get the benefit of the statute, but otherwise we're going to enforce the terms as written. That's what the reasonable expectations doctrine does. And there's a backstop here. It's not that insurers are going to be able to include unfair or, you know, skirt the laws. These have to be approved by the commissioner. And the commissioner here approved the form by operation of law over 25 years ago. There's no evidence to the contrary. And the commissioner is the one that sits atop this extensive regulatory scheme. And in Section 3512 and Section 2714 of the Delaware Code, those standards for approval of forms are shot through with discretion. We're talking about providing in substance what the statute requires, provisions that, in the opinion of the commissioner, are not less favorable. That is a pretty expansive grant of discretion to the commissioner, who's elected by the people of Delaware, to make these decisions. And the legislature gives the commissioner the power to make those decisions. I don't think the court should presume that the commissioner is asleep at the switch. Let me ask you this. Do you agree with your friend on the other side that if we enforce the limiting provision, the PECL, their case is done? Is it dispositive? Yes, that it's dispositive. If this Court applies the preexisting condition limitation, whether through the statutory lens or not, this case is over. Plaintiff said that on page 1 of the reply brief. There's no need to reach the standard of review question about de novo or abuse of discretion, because plaintiff received medical treatment on multiple occasions from multiple physicians throughout the look-back period for the very same conditions that plaintiff is saying are preexisting. What in your mind are the plan documents? So the plan here is the policy and the ACF taken together. The mandatory rider that you pointed out, it says that Lana has been appointed as the claim fiduciary. That is what happened in the appointment of claim fiduciary form. That document uses mandatory effective language that Lana shall have discretion, that it is hereby appointed and hereby accepts that appointment. The effective dates are in lockstep with the policy. Those documents are read together from the start, and that forms the plan at the outset. Was the ACF attached to the policy? It is part of the administrative record, so it's attached in that way. It does apply to four different policies listed at the bottom of the ACF, and so it's part of the administrative record. It's with the policy. It's certainly approved by Lana, but there's no need for it to actually be an amendment. We think it meets the requirements for an amendment to the policy, but there's no need for it to be an amendment because it's part of the plan from the outset. That's based on the substance of the form with the mandatory effective language. It's also the structure of the document. It's signed by HRL Laboratories Human Resources Director for the plan. It says that he's authorized to amend the plan. Again, the amendatory writer then refers to that conferral, that appointment as claim fiduciary. There's no conflict between the policy and the ACF here. They're read together, and then the summary plan description puts a bow on all of this, and while that's not itself a plan document, it is a relevant consideration. It's a mandatory disclosure. It's supposed to be sufficiently comprehensive to describe the terms of the plan. It's often the only document that is affirmatively sent out to participants. It's the summary plan description in here on page 139 of the record. It says that Lana has discretion, that it's been appointed as the claim fiduciary. So the policy, the ACF, the summary plan description, they're all talking to each other, and they're all pointing in the same direction, is that Lana has discretion. That is the type of plan that HRL Laboratories created, and they have the authority to craft that plan as they see fit. And the Seventh Circuit agreed in Rayburn. A number of district courts have agreed. The Eighth Circuit, although in a somewhat different decision, agreed that the appointment of claim fiduciary is a valid conferral of discretion. There's certainly no reason to create a circuit split over the appointment of claim fiduciary, but there's also no need to reach the appointment of claim fiduciary issue. On remedies, the idea that because the preexisting condition limitation in the policy is if this Court were to disagree with me on every step of the analysis, that the approval by the Commissioner doesn't matter, that it violates the statute, that that violation matters, that Delaware law isn't sufficient to resolve the question, that the reasonable expectation doctrine means that the policy drops out altogether, that is not something that we could have reasonably anticipated. And I don't see anything in this Court's case law that says that Lana would have to engage in hypothetical analysis about whether other things are met if, for instance, down the road the Court were to invalidate the terms of the policy. That would just be something that we would reconsider. I see my time has expired. Thank you. Thank you again. On the appointment of claim fiduciary, it says it's not an amendment. It says it authorizes an amendment. It is an enabling document just like the document relied upon or not relied upon in Sinelli. On the issue of the Delaware Insurance Commissioner, Delaware does not enforce illegal provisions. The Delaware Supreme Court talked about this in Monteluski in 1955. It said even though the Commissioner approved the form by inaction, we don't enforce illegal provisions. So that question is settled law in Delaware. If the provision does not conform to law, it's not enforced. The issue of what, in fact, is the preexisting condition, their argument is, look, we're not relying upon that clause. If the pre-ex is void and the issue is you enforce the statute pursuant to Delaware law, you enforce the policy pursuant to Federal law. Federal law says a provision that's not clear, plain and conspicuous is void. Once you declare the provision void, none of it's enforceable. That's my point. And you should declare the entire provision void because no layperson can find its terms unless they look to the statute. Do you have any questions? Any other questions? Thank you very much. Thank you, Your Honor. Thank you. I thank both counsel for their very helpful arguments this morning. This case is submitted.
judges: THOMAS, ALBA, Rakoff